# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF MISSOURI

# SOUTHERN DIVISION



RECEIVED MAY 0 8 2026 PAIGE WYMORE-WYNN, CLK U.S. DISTRICT COURT WEST DISTRICT OF MISSOURI

| | |
|---|---|
| DENNIS MANNON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 6:26-cv-03259-MDH |
| | ) |
| UNITED STATES DEPARTMENT OF | ) |
| HOMELAND SECURITY; | ) |
| TRANSPORTATION SECURITY | ) |
| ADMINISTRATION; | ) |
| CHRISTINE GRIGGS, in her official | ) |
| capacity | ) |
| as Assistant Administrator of the TSA | ) |
| Office of Civil Rights and Liberties; | ) |
| KRISTIN C. ANDRADE, in her official | ) |
| capacity; | ) |
| BRIAN S. MEADOWS, in his official | ) |
| capacity as Assistant Federal Security | ) |
| Director, Mission Support, Missouri | ) |
| Airports; | ) |
| CITY OF SPRINGFIELD, MISSOURI; | ) |
| GREG WHEELEN, in his official and | ) |
| individual capacities as Chief of | ) |
| Springfield-Branson National Airport | ) |
| Police; | ) |
| KEVIN HOUSEMAN, in his official and | ) |
| individual capacities (DSN 802); | ) |
| DARREN WHISNANT, in his official and | ) |
| individual capacities (DSN 829 / Badge | ) |
| 38233); | ) |
| CASEY MATTHEWS, in her/his official | ) |
| and | ) |
| individual capacities (DSN 820); and | ) |
| JOHN AND JANE DOES 1-10 (TSA | |
| officers | |
| and supervisor present at SGF checkpoint, | |
| September 29, 2025), | |

Defendants.

## FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

## JURY TRIAL DEMANDED

## INTRODUCTION

1. Plaintiff Dennis Mannon, proceeding pro se, brings this civil rights action against the federal and state defendants for the September 29, 2025 denial of effective communication and reasonable accommodation, the unconstitutional pat-down, the seizure and unauthorized photographing of Plaintiff's identification, and the post-incident retaliatory conduct that took place at the Transportation Security Administration ("TSA") checkpoint at Springfield-Branson National Airport ("SGF") in Springfield, Missouri.

2. Plaintiff is a deaf, hard-of-hearing American citizen, a Missouri resident, and at the time of the incident a candidate for the United States House of Representatives, Missouri's 4th Congressional District. Plaintiff disclosed his disability at the front of the SGF security line and asked, repeatedly, that TSA personnel and the airport-police officers who joined them either communicate in writing or allow him to use his phone — already X-ray cleared — for speech-to-text. Both requests were refused. Plaintiff was surrounded by approximately six TSA officers and two SGF Airport Police officers, denied his communication device, yelled at by an officer who knew he was deaf, and compelled to submit to a hands-on pat-down. After the encounter, Officer Darren Whisnant of the SGF Airport Police seized Plaintiff's identification off a public table, photographed it on his personal phone without consent, and refused to return it.

3. Plaintiff is a heart attack survivor who suffers from partial deafness and medical anxiety. These pre-existing conditions render Plaintiff medically vulnerable to acute psychological and physical stress, and they materially increase the harm caused by Defendants' conduct under the eggshell-plaintiff rule.

4. Plaintiff exhausted available administrative remedies. The TSA Office of Civil Rights and Liberties expressly declined civil-rights jurisdiction and routed his complaint back to the very airport where the conduct occurred. The TSA Office of Civil Rights and Liberties subsequently issued two closure letters (November 21 and November 24, 2025), the second of which expressly reduced the operative pat-down to the "cargo side pant pockets" at "6:29 in the CCTV video" and characterized Plaintiff's lifting of his shirt as his own act ("You chose to raise your clothing"). The Department of Justice, Civil Rights Division, Disability Rights Section, by letter dated February 19, 2026 (Reference 670929-KQD), referred the matter back to the TSA Office of Civil Rights and Liberties under Section 504 of the Rehabilitation Act of 1973 and stated that DRS "will take no further action."

5. This action seeks damages and equitable relief against the federal and state defendants under (a) Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; (b) Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131–12134, and the ADA's anti-retaliation provision, 42 U.S.C. § 12203; (c) 42 U.S.C. § 1983 for violations of the Fourth, First, and Fourteenth Amendments; (d) the Administrative Procedure Act, 5 U.S.C. §§ 701–706; and (e) Missouri common law for battery, false imprisonment, intentional infliction of emotional distress, invasion of privacy, and conversion.

## JURISDICTION AND VENUE

6. This Court has original federal-question jurisdiction pursuant to 28 U.S.C. § 1331, civil-rights jurisdiction pursuant to 28 U.S.C. § 1343(a)(3)–(4), declaratory-judgment jurisdiction pursuant to 28 U.S.C. § 2201, mandamus jurisdiction pursuant to 28 U.S.C. § 1361, and Administrative Procedure Act jurisdiction pursuant to 5 U.S.C. § 702.

7. This Court has supplemental jurisdiction over Plaintiff's Missouri state-law claims pursuant to 28 U.S.C. § 1367.

8. Plaintiff presented a Form SF-95 administrative tort claim under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680, to the United States Department of Homeland Security and the Transportation Security Administration. Plaintiff signed the SF-95 on April 25, 2026, and submitted it by certified mail postmarked April 27, 2026, to the TSA Claims Management Branch (6595 Springfield Center Drive, Springfield, VA 20598-6004), with a contemporaneous courtesy copy by certified mail to the DHS Office of the General Counsel (2707 Martin Luther King Jr. Avenue, S.E., Washington, D.C. 20528). The SF-95 demands a sum certain of $5,000,000.00 in personal-injury damages. Pursuant to 28 U.S.C. § 2675(a), Plaintiff may not commence FTCA claims in this Court until either (a) the agency issues a final written denial or (b) six months have elapsed without final disposition. Plaintiff therefore does not assert any FTCA claim against the United States in this Complaint and reserves the right to amend pursuant to Fed. R. Civ. P. 15 to add FTCA claims after the six-month constructive-denial period ripens or upon written denial, whichever is earlier.

9. Plaintiff does not assert a *Bivens* damages claim against any individual federal defendant. The named federal defendants — Christine Griggs, Kristin C. Andrade, and Brian S. Meadows — are sued solely in their official capacities for prospective declaratory and injunctive relief. *See Egbert v. Boule*, 596 U.S. 482 (2022).

10. **Qualified immunity.** Plaintiff alleges constitutional violations against state-actor individual defendants Whisnant, Matthews, Houseman, and Wheelen that were clearly established at the time of the September 29, 2025 conduct, and that no reasonable officer in their respective positions would have believed lawful. *Saucier v. Katz*, 533 U.S. 194 (2001); *Pearson v. Callahan*, 555 U.S. 223 (2009). The "clearly established" prong is satisfied for the Fourth Amendment pat-down/seizure conduct (*Florida v. Bostick*, 501 U.S. 429 (1991); *United States v. Aukai*, 497 F.3d 955 (9th Cir. 2007) (en banc)); for the Fourth Amendment seizure-of-property conduct (*Soldal v. Cook County*, 506 U.S. 56 (1992); *United States v. Place*, 462 U.S. 696 (1983)); for the ADA / Rehabilitation Act effective-communication duty applicable to law enforcement (*Bahl v. County of Ramsey*, 695 F.3d 778 (8th Cir. 2012); *Loye v. County of Dakota*, 625 F.3d 494 (8th Cir. 2010)); and for the First Amendment seizure-as-retaliation framework (*Nieves v. Bartlett*, 587 U.S. 391 (2019)). Because qualified immunity is an affirmative defense for which Defendants bear the burden of pleading and proof (*Crawford-El v. Britton*, 523 U.S. 574 (1998)), and because qualified immunity may not be granted on a record where material facts are disputed (*Tolan v. Cotton*, 572 U.S. 650 (2014)), Plaintiff respectfully requests that any qualified-immunity defense be addressed only after a developed record and only on undisputed facts viewed in the light most favorable to Plaintiff.

11. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) and (e)(1) because a substantial part of the events giving rise to the claims occurred in Greene County, Missouri, within the Southern Division of this District. 28 U.S.C. § 105(b).

12. Plaintiff demands a trial by jury on all issues so triable as a matter of right pursuant to Fed. R. Civ. P. 38.

## PARTIES

13. Plaintiff Leslie Dennis Mannon, known as and hereinafter referred to as Dennis Mannon, is a citizen of the United States and a resident of Lebanon, Laclede County, Missouri. Plaintiff is deaf and hard of hearing, and is therefore a "qualified individual with a disability" within the meaning of 42 U.S.C. § 12131(2) and 29 U.S.C. § 794(a). His primary means of communication in noisy environments is a speech-to-text application installed on his personal mobile phone. Plaintiff is a heart attack survivor who suffers from partial deafness and medical anxiety. Plaintiff brings this action pro se. Plaintiff is not a licensed attorney; to the extent any pleading or filing in this case does not conform precisely to professional pleading practice, Plaintiff respectfully requests that the Court apply the liberal pro se construction standard of *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

14. **Defendant United States Department of Homeland Security ("DHS")** is an executive department of the United States. DHS is the parent department of the Transportation Security Administration. DHS is a federal agency subject to Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

15. **Defendant Transportation Security Administration ("TSA")** is a component agency of DHS. TSA is responsible for security screening at SGF and is bound by 49 U.S.C. § 114(n), 6 C.F.R. Part 15, and TSA Management Directive 100.4. TSA is a federal agency subject to Section 504 of the Rehabilitation Act.

16. **Defendant Christine Griggs** is, on information and belief, the Assistant Administrator of the TSA Office of Civil Rights and Liberties, with offices at 601 South 12th Street, Arlington, Virginia 20528. Defendant Griggs is the official to whom the Department of Justice referred Plaintiff's complaint by letter dated February 19, 2026 (DOJ DRS Reference 670929-KQD). She is sued in her official capacity only.

17. **Defendant Kristin C. Andrade** is a Program Analyst in the TSA Office of Civil Rights and Liberties, Ombudsman and Traveler Engagement, Customer Service Branch. She authored the November 21, 2025 and November 24, 2025 letters that closed Plaintiff's complaint. She is sued in her official capacity only.

18. **Defendant Brian S. Meadows** is the Assistant Federal Security Director, Mission Support, for the Missouri Airports of TSA, including Springfield-Branson National Airport. He authored the October 24, 2025 letter finding "no evidence" of a TSA-screening-procedure violation. He is sued in his official capacity only.

19. **Defendant City of Springfield, Missouri** ("City") is a municipal corporation organized under the laws of the State of Missouri. The City owns and operates Springfield-Branson National Airport and the Springfield-Branson National Airport Police. The City is a "public entity" within the meaning of 42 U.S.C. § 12131(1) and a recipient of federal financial assistance within the meaning of 29 U.S.C. § 794(a). The City is liable under § 1983 because the deprivations of Plaintiff's constitutional rights resulted from official policy, custom, and failure to train in the manner pleaded in Count VIII below.

20. **Defendant Greg Wheelen** is the Chief of the Springfield-Branson National Airport Police. He was, at all relevant times, the supervising official responsible for departmental policy, training, and discipline of the SGF Airport Police, including Defendants Houseman, Whisnant, and Matthews. He is sued in his official and individual capacities.

21. **Defendant Sergeant Kevin Houseman (DSN 802)** is a Sergeant of the SGF Airport Police and was, at all relevant times, the direct supervisor of Defendants Whisnant and Matthews on the second shift. He is sued in his official and individual capacities.

22. **Defendant Officer Darren Whisnant (DSN 829 / Badge 38233)** is an Officer of the SGF Airport Police. He is sued in his official and individual capacities.

23. **Defendant Officer Casey Matthews (DSN 820)** is an Officer of the SGF Airport Police. Defendant Matthews is sued in his/her official and individual capacities.

24. **Defendants John and Jane Does 1–10** are TSA officers (including a TSA supervisor who typed a written communication on her own personal phone) who were on duty at the SGF main checkpoint on September 29, 2025, between approximately 1:00 PM and 2:00 PM Central Time. Plaintiff will amend the Complaint to identify each Doe defendant by name once their identities are determined through discovery.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Disability and Communication Practices

25. Plaintiff is deaf and hard of hearing. He cannot reliably understand spoken instructions in noisy environments such as a TSA security checkpoint.

26. Plaintiff's primary means of communication in such environments is a speech-to-text application installed on his personal mobile phone.

27. Plaintiff has previously been screened at other TSA checkpoints, including those at Dallas-Fort Worth International Airport ("DFW") and George Bush Intercontinental Airport ("IAH") in Houston. At those checkpoints, TSA officers passed Plaintiff's phone separately through the X-ray and returned it to Plaintiff before initiating screening, so that Plaintiff could understand TSA's instructions through speech-to-text. Plaintiff has been screened, and accommodated, at peer airports without incident.

28. **Pre-existing medical conditions.** In addition to his deafness and hard-of-hearing condition, Plaintiff lives with diagnosed medical anxiety and is a survivor of a prior myocardial

infarction (heart attack). These pre-existing conditions render Plaintiff medically vulnerable to acute psychological and physical stress. Cardiovascular events triggered by acute psychological stress are well-recognized in medical and legal literature. Plaintiff's medical providers have advised him to avoid prolonged high-stress encounters because of the cardiovascular risk those encounters pose to a heart-attack survivor with anxiety.

29. **Eggshell-plaintiff rule.** Plaintiff's pre-existing conditions were unknown to Defendants at the moment of the September 29, 2025 encounter, but they are squarely relevant to damages under the long-recognized "eggshell plaintiff" rule. A defendant takes the plaintiff as he finds him; a tortious actor is liable for the full extent of injury caused, even if the injury is greater than would have been suffered by a plaintiff without pre-existing vulnerabilities. *See* Restatement (Second) of Torts § 461; Missouri Approved Instructions (MAI) 4.02 (aggravation of pre-existing condition); *Williams v. Daus*, 114 S.W.3d 351 (Mo. App. S.D. 2003).

30. **Aggravation of pre-existing conditions.** The September 29, 2025 encounter — the encirclement by approximately eight officers, the shouting in Plaintiff's face by an officer who knew Plaintiff was deaf, the deprivation of Plaintiff's communication device, the coercive pat-down conducted while Plaintiff was unable to hear or be heard, the seizure of Plaintiff's identification, and the resulting public humiliation — caused Plaintiff acute psychological stress, an exacerbation of his anxiety, and increased cardiovascular risk. Plaintiff has experienced continuing anxiety, sleep disturbance, intrusive recollection, fear of future air travel, and physical manifestations consistent with post-traumatic stress since the encounter. Plaintiff's continuing reasonable apprehension of retaliatory federal traveler designation and of repetition during future federal screening has further aggravated those conditions.

31. **Ticketed passenger status on September 29, 2025.** On the date of the incident, Plaintiff held a confirmed paid revenue ticket on American Airlines Flight 3494 (Confirmation Code: WHUKRW; Ticket Number: 0017333821807), departing Springfield-Branson National Airport (SGF) at 2:30 PM Central Time on Monday, September 29, 2025, with scheduled arrival at Dallas-Fort Worth International Airport (DFW) at 3:54 PM Central Time. Plaintiff was assigned Seat 17A. The ticket was issued through FCM Platform corporate travel management. American Airlines AAdvantage records reflect that the segment was flown and that frequent-flyer mileage credit posted to Plaintiff's account on November 10, 2025. Plaintiff's status as a paid ticketed passenger materially constrained his ability to leave the encounter: walking away from the checkpoint at any point during the conduct described herein would have caused Plaintiff to forfeit his flight, lose the value of his ticket, miss his three subsequent connecting segments, and fail to reach his lawful destination. That financial and itinerary-based compulsion is directly relevant to the Fourth Amendment "reasonable person would not have felt free to leave" inquiry and to the assessment of duress under the Missouri-law false-imprisonment count.

## B. The September 29, 2025 SGF Checkpoint Incident

32. On Monday, September 29, 2025, between approximately 1:00 PM and 2:00 PM Central Time, Plaintiff arrived at the main TSA security checkpoint at Springfield-Branson National Airport.

33. At the front of the line, Plaintiff disclosed to the first TSA officer that he is deaf and hard of hearing and that he requires communication accommodations.

34. Plaintiff voluntarily surrendered all of his carry-on items into the X-ray scanner, including his mobile phone — his speech-to-text and ADA-required communication device.

35. Plaintiff walked through the body scanner ("AIT" / Advanced Imaging Technology) as instructed.

36. After the body scanner, additional TSA officers approached and indicated that Plaintiff would be subjected to a pat-down. The body scanner had registered an alarm in a "yellow area" on the AIT generic outline.

37. Plaintiff repeatedly requested, by gesture and by voice, that TSA officers either (a) communicate in writing or (b) allow him to retrieve his phone from the X-ray bin so he could use speech-to-text. Both requests were refused.

38. To de-escalate the encounter, Plaintiff emptied his pockets, raised his shirt, and exposed his waistline and clothing to demonstrate visually that he had no concealed items. TSA continued to demand a hands-on pat-down.

39. A TSA supervisor (Doe Defendant) eventually typed a brief written message on her own personal phone — proof that written communication was both feasible and intermittently provided, but was withheld at the moment Plaintiff had asked for it.

40. Defendants Whisnant and Matthews of the SGF Airport Police arrived at the checkpoint. They did not provide written communication to Plaintiff. Defendant Whisnant stood inches from Plaintiff's face and yelled, ostensibly to "make him hear," knowing that Plaintiff was deaf.

41. Plaintiff was, at this point, surrounded by approximately six TSA officers and two SGF Airport Police officers. He was unable to hear, unable to communicate, and unable to retrieve his phone. He did not feel free to leave, and a reasonable person under those circumstances would not have felt free to leave.

42. Under that pressure and duress, Plaintiff submitted to a pat-down. TSA's Office of Civil Rights and Liberties later described the pat-down as an "alarm-resolution patdown" of Plaintiff's "cargo side pant pockets" beginning at "6:29 in the CCTV video."

43. After the pat-down, Plaintiff was told he was free to go. His bag and phone were nonetheless withheld for additional inspection. After a delay, Plaintiff's bag, phone, and identification were returned.

44. Plaintiff began audio-video recording on his now-returned phone, fearing further escalation. On the recording, Plaintiff is heard objecting in real time: "I have the right to video you," "Violation. Americans with Disability," "I'm not breaking [the] law," and "you're getting a report, you're getting a report, sir," among other statements.

45. While Plaintiff was repacking his belongings at the tables near the checkpoint, Defendant Whisnant produced his **personal phone** and began recording Plaintiff.

46. Defendant Whisnant then walked across the checkpoint area to Plaintiff's table, **picked up Plaintiff's identification from the table, photographed it on his personal phone,** and refused to return it when Plaintiff reached for it. Defendant Whisnant did not state any lawful purpose for the seizure or photographing.

47. The City of Springfield has subsequently confirmed (in its Sunshine Law response, Request R020778-100225, dated October 8, 2025): the SGF Airport Police do not wear body-worn cameras; the airport-police officers made no incident report and kept no written log; and the airport-cropped CCTV footage is silent and was redacted by the airport, not by Plaintiff, before release.

48. A bystander — a woman with long blonde hair — visibly shook her head at Defendant Whisnant's conduct.

## C. Same-Day Complaint and TSA's Initial Routing

49.    Within hours of the incident, Plaintiff filed a complaint through TSA's online web form. TSA's Contact Center auto-acknowledged receipt and assigned Service Request **07488114**.

50.    On the same day — September 29, 2025 — Plaintiff also filed a complaint with the U.S. Department of Justice, Civil Rights Division, which was later assigned internal ID **670929-KQD**.

51.    The next day — Tuesday, September 30, 2025 — TSA's Disability and Multicultural Branch reviewed Plaintiff's complaint and **declined civil-rights jurisdiction**. TSA wrote: "Civil Rights Complaint Reviewed – Referred to CSM. The Disability and Multicultural Branch reviewed your complaint and determined the local airport TSA would be better suited to address the concerns you raised." TSA routed the complaint back to the same airport where the conduct occurred.

52.    Plaintiff replied within an hour, noting that being referred to the alleged offenders was a structural conflict of interest, and demanding escalation to the TSA Office for Civil Rights and Liberties for impartial review.

## D. Plaintiff's October 2, 2025 In-Person Visit and Written Complaints

53.    On Thursday, October 2, 2025, Plaintiff returned to SGF and met in person with TSA Manager Chad Vincent. Plaintiff recorded the encounter.

54.    Mr. Vincent acknowledged the seriousness of the conduct, stated he would deliver Plaintiff's report to Assistant Federal Security Director Charles Kirkland, and said: "I wasn't here that day, so I want to apologize for that happened. I don't know what all happened. We're not known for that. We usually have very good [TSA] officers. ... We can't have that around here, not at all."

55. The same day, Plaintiff delivered or sent three formal letters of complaint: (a) a letter to the Federal Security Director, TSA, SGF, with a FOIA request and an evidence-preservation demand; (b) a letter to Springfield Police Chief Paul Williams (Chief Williams replied within hours that the SGF Airport Police are a separate agency and forwarded Plaintiff's letter to Defendant Wheelen — **Defendant Wheelen has never responded**); and (c) a formal "TSA Report" reciting the September 29, 2025 events and demanding investigation.

### E. The October 8, 2025 Sunshine Law Response

56. On Wednesday, October 8, 2025, the City of Springfield, through City Clerk Compliance Specialist Russ McLaughlin, produced a Sunshine Law response (R020778-100225). That response made the following admissions: (a) Officers Whisnant DSN 829 and Matthews DSN 820, both 2nd shift, supervised by Sgt. Kevin Houseman DSN 802; (b) the SGF Airport Police **do not wear body-worn cameras**; (c) the airport's CCTV is silent and was **cropped and redacted by the airport, not by Plaintiff**, before release, and the original wider-angle video remains in airport custody; and (d) the SGF Airport Police **made no incident report and kept no written log** of the encounter.

### F. TSA's "SOP-Followed" Findings

57. On October 24, 2025, Defendant Meadows wrote a two-sentence letter finding "no evidence" of a TSA-screening-procedure violation. The letter mis-stated the date of the incident as "September 25, 2025."

58. On November 21, 2025, Defendant Andrade wrote a substantive denial. Andrade confirmed that TSA's Office of Civil Rights and Liberties "did not take jurisdiction" and routed the complaint back to the airport "as a customer service complaint." Andrade further wrote: "TSA has no jurisdiction over airport or law enforcement personnel."

59. On November 24, 2025, after Plaintiff's renewed objection, Andrade issued TSA's "final response," in which she made the agency's most consequential admission: "You received an alarm resolution patdown where the officer at 6:29 in the CCTV video pats down your cargo side pant pockets, not a full-body pat down. ... You should not be asked or required, nor did the SGF officers do so, to remove or lift any article of clothing to reveal a sensitive body area. You chose to raise your clothing."

## G. The November 24, 2025 Mass Escalation and Subsequent TSA Investigation Openings

60. On November 24, 2025, Plaintiff filed a Civil Rights Division portal report with the Department of Justice, receiving record number **676669-HCR**, and submitted parallel escalations to the DHS Office of Inspector General Hotline, the DHS Office for Civil Rights and Civil Liberties, the TSA Office of Inspection, and the TSA Ombudsman, and submitted a Privacy Release Form to the Office of U.S. Representative Mark Alford (MO-04).

61. On December 3, 2025, Transportation Security Specialist Chelsea H. Maddy confirmed the Office of Inspection matter was opened as **HL25-05471**.

62. The earlier-opened TSA Investigations Hotline matter, **HL25-05132** (October 16, 2025), and the Ombudsman Service Request **07581368** (November 27, 2025) remain open without substantive findings on the record.

## H. The DOJ Disability Rights Section Referral

63. On February 19, 2026, the U.S. Department of Justice, Civil Rights Division, Disability Rights Section, Reference ID 670929-KQD, issued a "Referral of Complaint for Appropriate Action" addressed to Defendant Christine Griggs. The DRS letter states: "The Disability Rights Section has reviewed the enclosed complaint and determined that it raises issues that are more appropriately addressed by the Transportation Security Administration

(TSA) under Section 504 of the Rehabilitation Act." The letter concludes: "The Disability Rights Section will take no further action on this matter."

64. As of the filing of this Complaint, no federal or state administrative agency has taken substantive ownership of Plaintiff's civil-rights claims. TSA's own Office of Civil Rights and Liberties declared the matter closed; DOJ DRS referred the matter back to that same office.

## COUNTS

### COUNT I

**SECTION 504 OF THE REHABILITATION ACT OF 1973, 29 U.S.C. § 794**

**(Against Defendants TSA and DHS)**

65. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

66. Section 504 prohibits any program or activity conducted by any Executive agency from excluding from participation, denying the benefits of, or subjecting to discrimination any otherwise qualified individual with a disability solely by reason of his or her disability.

67. Plaintiff is a qualified individual with a disability. TSA's screening of Plaintiff is a program or activity of an Executive agency. Plaintiff's deafness was disclosed and known to TSA personnel from the moment he reached the front of the line.

68. TSA's denial of effective communication to Plaintiff — its refusal to write to him, its refusal to allow him use of his speech-to-text device, and its conduct of the screening encounter without any meaningful communication-accommodation process — was a denial of meaningful access to a federal program. It was also inconsistent with TSA's own Management Directive 100.4 and DHS regulations at 6 C.F.R. Part 15.

69. TSA's subsequent administrative review (the Andrade November 21 and November 24 letters; the Meadows October 24 letter) compounded the violation by declining civil-rights jurisdiction and limiting the inquiry to TSA's internal screening SOPs, ignoring § 504 standards.

70. As a direct and proximate result, Plaintiff suffered humiliation, public emotional distress, deprivation of communication during a coercive encounter, and continuing reasonable apprehension of retaliatory adverse-traveler designation.

71. Plaintiff seeks compensatory damages, declaratory relief, injunctive relief (re-do of the agency review applying § 504 standards; adoption of an effective written-communication policy at SGF), and attorneys' fees and costs under 29 U.S.C. § 794a(b).

## COUNT II

## TITLE II OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. §§ 12131–12134

### (Against Defendant City of Springfield and Defendants Wheelen, Houseman, Whisnant, and Matthews in their official capacities)

72. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

73. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

74. The City of Springfield is a "public entity." The SGF Airport Police is part of the City. Plaintiff is a qualified individual with a disability. The provision of safe passage through a

publicly-owned airport, including communication during an airport-police encounter, is a service, program, or activity of the City.

75. The City and its officers, with deliberate indifference, denied Plaintiff effective communication during a law-enforcement encounter, in violation of 28 C.F.R. § 35.160. The City has no policy or training program directing officers how to handle encounters with deaf individuals at SGF. The City does not equip its airport-police officers with body-worn cameras and produced no contemporaneous incident report or written log of the encounter.

76. Title II's requirements were clearly established in the Eighth Circuit by, *inter alia, Bahl v. County of Ramsey*, 695 F.3d 778 (8th Cir. 2012), and *Loye v. County of Dakota*, 625 F.3d 494 (8th Cir. 2010). Title II validly applies to local-government units and abrogates Eleventh Amendment immunity for fundamental-rights-implicating conduct. *Tennessee v. Lane*, 541 U.S. 509 (2004); *United States v. Georgia*, 546 U.S. 151 (2006). Standards for compensatory damages: *Meagley v. City of Little Rock*, 639 F.3d 384 (8th Cir. 2011) (deliberate indifference).

77. As a direct and proximate result, Plaintiff suffered humiliation, fear, and emotional distress during the encounter and continuing fear of further encounters.

78. Plaintiff seeks compensatory damages, declaratory relief, injunctive relief (mandatory written-communication procedures; mandatory body-camera deployment for SGF Airport Police; deaf-encounter training), and attorneys' fees and costs under 42 U.S.C. § 12205.

## COUNT III

### ANTI-RETALIATION UNDER THE ADA AND THE REHABILITATION ACT, 42

### U.S.C. § 12203

### (Against All Defendants)

79. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

80. Section 12203 prohibits discrimination against any individual because such individual has opposed any act or practice made unlawful by the ADA or Rehabilitation Act, or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under those statutes.

81. Plaintiff engaged in protected activity by (a) disclosing his disability and asking for accommodation in real time at the SGF checkpoint; (b) audio-video recording the encounter once his phone was returned; (c) filing same-day complaints with TSA and DOJ; (d) filing in-person and by mail on October 2, 2025; (e) escalating to TSA-OCR&L, TSA Ombudsman, TSA Office of Inspection, DHS CRCL, DHS OIG, FBI Springfield, MSHP PSD, and Rep. Alford's office.

82. Defendants engaged in adverse action including: continued and intensified denial of accommodation; the airport-police summons; the encirclement; the seizure and photographing of Plaintiff's identification; Officer Whisnant's personal-phone recording of Plaintiff after Plaintiff began recording; and TSA OCR&L's repeated declination of jurisdiction and procedural-only review of Plaintiff's claim. The closure was made "final" on November 24, 2025, the same day Plaintiff filed at DOJ.

83. The temporal proximity, the pattern, and the lack of any non-retaliatory justification establish causation under *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006).

84. Plaintiff seeks compensatory damages, punitive damages where available against state-actor individual defendants, declaratory relief, injunctive relief (anti-retaliation order;

affirmative confirmation that no SSSS or watchlist designation has been or will be applied), and fees.

**COUNT IV**

**42 U.S.C. § 1983 — FOURTH AMENDMENT (UNREASONABLE SEARCH — PAT-DOWN)**

**(Against Defendants Whisnant, Matthews, Houseman, and the City of Springfield)**

85. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

86. The pat-down conducted in the manner alleged — after Plaintiff had visually demonstrated the absence of contraband, while Plaintiff was surrounded by approximately eight officers, while Plaintiff's communication device had been taken from him, while Plaintiff was being yelled at by an officer who knew he was deaf, and without any meaningful communication-accommodation effort — was an unreasonable administrative search under the Fourth Amendment.

87. Airport screening searches must be no more extensive nor intensive than necessary, in light of current technology, to detect the presence of weapons or explosives. *United States v. Davis*, 482 F.2d 893, 913 (9th Cir. 1973); *United States v. Aukai*, 497 F.3d 955, 962 (9th Cir. 2007) (en banc); *United States v. Hartwell*, 436 F.3d 174 (3d Cir. 2006). A search that exceeds that justification is constitutionally unreasonable.

88. The encirclement and conduct surrounding the pat-down also constituted a *de facto* seizure of Plaintiff's person under *Florida v. Bostick*, 501 U.S. 429, 437 (1991), and *United States v. Hayden*, 759 F.3d 842, 846 (8th Cir. 2014).

89. The individual officer defendants are liable in their individual capacities under § 1983. The City is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for the policy and practice of conducting airport-police encounters without body-worn cameras, written reports, or deaf-accommodation procedures (further pleaded in Count VIII).

90. Plaintiff seeks compensatory and punitive damages, declaratory relief, injunctive relief, and fees and costs under 42 U.S.C. § 1988.

## COUNT V

## 42 U.S.C. § 1983 — FOURTH AMENDMENT (UNREASONABLE SEIZURE OF IDENTIFICATION)

### (Against Defendant Whisnant and the City of Springfield)

91. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

92. After the pat-down, after Plaintiff was told he was free to go, and after Plaintiff began recording, Defendant Whisnant walked across the checkpoint area, picked up Plaintiff's identification off a public table, and photographed it on his personal phone without Plaintiff's consent and without any stated lawful purpose.

93. The seizure of personal property from a citizen in a non-administrative setting, without warrant, probable cause, or any other recognized Fourth Amendment exception, is unreasonable. *Soldal v. Cook County*, 506 U.S. 56 (1992); *United States v. Place*, 462 U.S. 696, 707 (1983). The unjustified demand for, and the seizure and photographing of, government-issued identification — absent reasonable suspicion supported by articulable facts — also violates the Fourth Amendment. *Hiibel v. Sixth Judicial Dist. Court of Nev.*, 542 U.S. 177 (2004); *Brown v. Texas*, 443 U.S. 47 (1979).

94. The seizure was clearly established as unreasonable at the time of the conduct. Defendant Whisnant is not entitled to qualified immunity.

95. Plaintiff seeks compensatory and punitive damages, declaratory relief, injunctive relief (return of the photograph and any copies; affirmative destruction of the image), and fees.

## COUNT VI

### 42 U.S.C. § 1983 — FIRST AMENDMENT RETALIATION

### (Against Defendant Whisnant and the City of Springfield)

96. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

97. Plaintiff engaged in protected First Amendment activity when, immediately upon the return of his mobile phone, he began recording Defendant Whisnant and the encounter for his own safety and accountability purposes. Plaintiff also engaged in protected activity by stating, on the record, "I have the right to video you," and "you're getting a report, you're getting a report, sir."

98. Defendant Whisnant retaliated by (a) producing his own personal phone and recording Plaintiff and (b) seizing and photographing Plaintiff's identification — a deprivation of Plaintiff's possession and privacy in his personal-identifying information.

99. There was no probable cause for any seizure of Plaintiff's identification. *Nieves v. Bartlett*, 587 U.S. 391 (2019), permits a First Amendment retaliation claim to proceed in the absence of probable cause.

100. Plaintiff acknowledges that the Eighth Circuit has not as cleanly established a free-standing right to record police as other circuits. *Akins v. Knight*, 863 F.3d 1084 (8th Cir. 2017). Plaintiff's First Amendment claim is therefore pleaded primarily on the seizure-as-

retaliation framework of *Nieves*, and in the alternative on the persuasive consensus among the First, Third, Fifth, Seventh, Ninth, and Eleventh Circuits recognizing the right to record public officials in public spaces. *Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011); *Fields v. City of Philadelphia*, 862 F.3d 353 (3d Cir. 2017); *Turner v. Lieutenant Driver*, 848 F.3d 678 (5th Cir. 2017); *ACLU v. Alvarez*, 679 F.3d 583 (7th Cir. 2012); *Fordyce v. City of Seattle*, 55 F.3d 436 (9th Cir. 1995); *Smith v. City of Cumming*, 212 F.3d 1332 (11th Cir. 2000).

101. Plaintiff seeks compensatory and punitive damages, declaratory relief, injunctive relief, and fees.

## COUNT VII

## 42 U.S.C. § 1983 — FOURTEENTH AMENDMENT (INFORMATIONAL PRIVACY)

### (Against Defendant Whisnant)

102. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

103. The Fourteenth Amendment protects an individual's interest in avoiding disclosure of personal information held or collected by the state. *Whalen v. Roe*, 429 U.S. 589, 599 (1977).

104. Defendant Whisnant's photographing of Plaintiff's government-issued identification on his personal phone, without consent or a stated lawful purpose, and his subsequent failure to disclose what was done with that image, violated Plaintiff's informational-privacy interest in the data shown on his identification.

105. Plaintiff seeks compensatory and punitive damages, declaratory relief, injunctive relief, and fees.

## COUNT VIII

## 42 U.S.C. § 1983 — MONELL MUNICIPAL LIABILITY

## (Against Defendant City of Springfield)

106.   Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

107.   The City of Springfield is liable under *Monell v. Department of Social Services,* 436 U.S. 658 (1978), for the constitutional violations described in Counts IV–VII because: (a) **Policy and custom of operating without body-worn cameras.** The City has adopted a policy or custom of staffing its airport-police agency without body-worn cameras. The City's Sunshine response of October 8, 2025 affirmed: "Airport police do not wear body cameras." (b) **Policy and custom of operating without contemporaneous incident-reporting.** The City's Sunshine response affirmed: "Airport police did not make a report and there is no written log or communication re: the incident." (c) **Failure to train.** Upon information and belief, the City has not trained its airport-police officers on the duty to provide effective communication to deaf and hard-of-hearing individuals during law-enforcement encounters at SGF, in violation of *Bahl v. County of Ramsey, supra,* and ADA Title II. *City of Canton v. Harris,* 489 U.S. 378 (1989). (d) **Failure to discipline / supervise.** Upon information and belief, the City has not disciplined or even reviewed the conduct of Defendant Whisnant in this matter. Defendant Wheelen never responded to Plaintiff's October 2, 2025 forwarded complaint. *Connick v. Thompson,* 563 U.S. 51 (2011).

108.   The policies, customs, and failures described in this Count were the moving force behind each of the constitutional violations described in Counts IV–VII.

109. Plaintiff seeks compensatory damages, declaratory relief, injunctive relief (mandatory body-worn-camera policy; mandatory contemporaneous-incident-reporting policy; deaf-encounter training; discipline-and-review process), and fees.

## COUNT IX

### ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. §§ 701–706

### (Against Defendants TSA, DHS, and Christine Griggs in her official capacity)

110. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

111. The TSA closures of November 21 and November 24, 2025 (Andrade), and the underlying October 24, 2025 finding (Meadows), constitute final agency action subject to judicial review under 5 U.S.C. § 704.

112. Those closures are arbitrary, capricious, an abuse of discretion, and not in accordance with law because: (a) TSA declined civil-rights jurisdiction and limited its review to internal SOP compliance, ignoring controlling § 504 / ADA / 1A / 4A authority that Plaintiff expressly placed on the record; (b) TSA routed the complaint to the alleged offenders, creating an irreconcilable conflict of interest; (c) Defendant Meadows mis-stated the date of the incident; and (d) the closures fail to address relevant factors and are unsupported by reasoned decisionmaking. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983); *Department of Commerce v. New York*, 588 U.S. 752 (2019).

113. The DOJ Disability Rights Section's February 19, 2026 letter referred the same matter to Defendant Griggs under § 504, classifying the matter as squarely within § 504's scope.

114. Plaintiff seeks vacatur of the November 21 and November 24, 2025 closures and the October 24, 2025 finding; remand to TSA for a § 504-compliant review; and an order requiring TSA to coordinate with DHS CRCL and DHS OIG to ensure independent review.

## COUNT X

## MISSOURI COMMON-LAW BATTERY

### (Against Defendants Whisnant, Matthews, Houseman, and the City of Springfield)

115. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

116. Defendants conducted a hands-on pat-down of Plaintiff under coercive conditions, without lawful privilege exceeding the scope of any administrative-search justification. The touching was harmful and offensive within the meaning of Missouri tort law.

117. Plaintiff seeks compensatory and punitive damages.

## COUNT XI

## MISSOURI COMMON-LAW FALSE IMPRISONMENT

### (Against Defendants Whisnant, Matthews, Houseman, and the City of Springfield)

118. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

119. Defendants confined Plaintiff at the checkpoint area without lawful privilege when they refused to permit him to retrieve his communication device, surrounded him with officers, withheld his belongings, and continued to seize his identification after telling him he was free to leave.

120. Plaintiff seeks compensatory and punitive damages.

**COUNT XII**

**MISSOURI COMMON-LAW INTENTIONAL INFLICTION OF EMOTIONAL**

**DISTRESS**

**(Against Defendants Whisnant, Matthews, Houseman, and the City of Springfield)**

121. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

122. Defendants' conduct — yelling into the face of a person they knew to be deaf, refusing to write or to allow speech-to-text, encircling Plaintiff, conducting the pat-down, seizing and photographing Plaintiff's identification, laughing at Plaintiff during the seizure — was extreme and outrageous. *Gibson v. Brewer*, 952 S.W.2d 239, 249 (Mo. banc 1997).

123. The conduct was intended to cause, or recklessly disregarded the high likelihood of causing, severe emotional distress.

124. Plaintiff suffered severe emotional distress as a result.

125. Plaintiff seeks compensatory and punitive damages.

**COUNT XIII**

**MISSOURI COMMON-LAW INVASION OF PRIVACY (INTRUSION UPON**

**SECLUSION)**

**(Against Defendant Whisnant)**

126. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

127. Defendant Whisnant's seizure and photographing of Plaintiff's identification, and his recording of Plaintiff on his personal phone after Plaintiff began recording him, constituted

an intentional intrusion upon Plaintiff's solitude and into Plaintiff's private affairs that would be highly offensive to a reasonable person. *Sofka v. Thal*, 662 S.W.2d 502 (Mo. banc 1983).

128. Plaintiff seeks compensatory and punitive damages, and an order requiring destruction of the photograph and the personal-phone video and any copies.

## COUNT XIV

## MISSOURI COMMON-LAW CONVERSION

### (Against Defendant Whisnant)

129. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

130. Defendant Whisnant exercised dominion over Plaintiff's identification — by taking it off the table and refusing to return it when Plaintiff reached for it — inconsistent with Plaintiff's right to immediate possession.

131. Plaintiff seeks compensatory damages and an order requiring destruction of any image of the identification.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Dennis Mannon respectfully requests that this Court enter judgment in his favor and against Defendants and award the following relief:

### 1. Declaratory Judgment

A declaration that (a) TSA / DHS violated Section 504 of the Rehabilitation Act and TSA Management Directive 100.4 / 6 C.F.R. Part 15 by denying Plaintiff effective communication during the September 29, 2025 SGF screening encounter and during subsequent administrative review; (b) the City of Springfield violated Title II of the ADA by deliberate indifference to

Plaintiff's communication needs and by maintaining policies and customs that deprived Plaintiff of meaningful access; (c) Defendants Whisnant, Matthews, and Houseman, acting under color of state law, violated the Fourth, First, and Fourteenth Amendments as set forth in Counts IV–VII; (d) TSA / DHS engaged in arbitrary and capricious agency action in violation of the APA in closing Plaintiff's complaint without addressing § 504 standards; and (e) none of the Defendants may apply, has applied, or will apply any retaliatory traveler designation (including SSSS, the Selectee List, or the No Fly List) to Plaintiff in response to Plaintiff's protected activity.

### 2. Compensatory Damages

Compensatory damages on each Count where damages are available, jointly and severally where appropriate, in an amount to be determined at trial, but no less than Nine Million Two Hundred Fifty Thousand Dollars ($9,250,000.00) in the aggregate, allocated as follows under the eggshell-plaintiff rule and the aggravating effect of the encounter on Plaintiff's pre-existing conditions of medical anxiety, partial deafness, and his status as a heart-attack survivor:

a. Against Defendants TSA and DHS (Counts I and IX, § 504 / APA): not less than $1,000,000.00.

b. Against Defendant City of Springfield (Counts II, IV, V, VI, VIII, X, XI, XII): not less than $2,000,000.00.

c. Against Defendant Darren Whisnant in his individual capacity (Counts IV, V, VI, VII, X, XI, XII, XIII, XIV): not less than $3,000,000.00.

d. Against Defendant Casey Matthews in his/her individual capacity (Counts IV, X, XI, XII): not less than $750,000.00.

e. Against Defendant Kevin Houseman in his individual capacity (Counts IV, VIII, X, XI, XII): not less than $750,000.00.

f. Against Defendant Greg Wheelen in his individual capacity (Counts II, III, VIII): not less than $750,000.00.

g. Anti-retaliation damages (Count III), against all retaliating Defendants jointly and severally: not less than $1,000,000.00.

### 3. Punitive Damages

Punitive damages against the individual state-actor Defendants Whisnant, Matthews, Houseman, and Wheelen, jointly and severally where appropriate, on the § 1983 and Missouri intentional-tort counts, in amounts to be proven at trial, but no less than Five Million Dollars ($5,000,000.00) in the aggregate, sufficient to punish the conduct and to deter similar conduct by other municipal law-enforcement personnel at federally-funded airports. *Smith v. Wade*, 461 U.S. 30 (1983).

### 4. Injunctive Relief

Injunctive relief requiring (a) TSA to vacate the October 24, November 21, and November 24, 2025 closures and to re-conduct a § 504 / ADA / 1A / 4A review with an independent reviewer outside the SGF Mission Support chain of command; (b) the City of Springfield to adopt and enforce a body-worn-camera policy for SGF Airport Police, a mandatory contemporaneous-incident-reporting policy, a written deaf-encounter procedure consistent with *Bahl v. County of Ramsey*, 695 F.3d 778 (8th Cir. 2012), and disability-encounter training for all SGF Airport Police personnel; (c) Defendant Whisnant and the City of Springfield to produce, or attest under oath to the destruction of, every copy of the photograph of Plaintiff's identification taken on Whisnant's personal phone and every copy of Whisnant's personal-phone recording of Plaintiff, and to submit to forensic examination of the relevant device under a protective order to confirm the same; and (d) the City of Springfield to produce

the original (uncropped, wider-angle) CCTV footage from the SGF main checkpoint and adjacent areas covering September 29, 2025, between 12:30 PM and 2:00 PM Central Time.

### 5. Statutory Attorneys' Fees and Costs

Reasonable attorneys' fees, expert fees, and litigation costs under 29 U.S.C. § 794a(b) (Rehabilitation Act), 42 U.S.C. § 12205 (ADA), and 42 U.S.C. § 1988(b) (§ 1983), and any other applicable fee-shifting statute. Should Plaintiff retain counsel during the pendency of this action, Plaintiff seeks the lodestar at prevailing rates.

### 6. Pre- and Post-Judgment Interest

Pre- and post-judgment interest at the maximum rate allowed by law, including under 28 U.S.C. § 1961.

### 7. Such Other and Further Relief

Such other and further relief — legal, equitable, declaratory, or injunctive — as this Court deems just and equitable.

### JURY DEMAND

Plaintiff demands a trial by jury under Fed. R. Civ. P. 38 on all claims and issues so triable.

### TOTAL DAMAGES SOUGHT

**Compensatory Damages: $9,250,000.00**

**Punitive Damages: $5,000,000.00**

**TOTAL MINIMUM DAMAGES: $14,250,000.00**

(Plus statutory attorneys' fees, costs, pre- and post-judgment interest, and such other relief as the Court deems just and proper.)

Respectfully submitted,

**DENNIS MANNON**

Plaintiff, Pro Se

25641 Ortega Drive

Lebanon, Missouri 65536

Telephone: (573) 703-3727

Email: dmansr@gmail.com

Date: _May 8_, 2026

**VERIFICATION**

I, Dennis Mannon, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am the Plaintiff in the above-captioned action.

2. I have read the foregoing Complaint for Damages, Declaratory and Injunctive Relief, and the factual allegations set out therein are true and correct based on my personal knowledge.

3. Those allegations made upon information and belief are stated as such and are true and correct based on my best knowledge after reasonable inquiry.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____May 8_____, 2026, at Lebanon, Missouri.

_____

**DENNIS MANNON**

Plaintiff