UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| LESLIE MANNON,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY, et.al.,<br><br>Defendants. | ) | No. 6:26-cv-03259-MDH |

**FEDERAL DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT, WITH INCORPORATED SUGGESTIONS IN SUPPORT**

Pursuant to Fed. R. Civ. P. 12(b)(1) and (6), Defendants United States Department of Homeland Security, Transportation Security Administration, Christine Griggs, in her official capacity as Assistant Administrator of the TSA Office of Civil Rights and Liberties, Kristin C. Andrade, in her official capacity, and Brian Meadows, in his official capacity as Assistant Federal Security Director, Mission Support, Missouri Airports (hereinafter "federal defendants"), hereby move for dismissal of all of Plaintiff's claims against the federal defendants. The Court lacks subject matter jurisdiction over Plaintiff's claims, as the federal defendants have not waived sovereign immunity as to Plaintiff's claims for monetary damages, and Plaintiff lacks standing on his claims for injunctive and declaratory relief. Further, regarding Plaintiff's Administrative Procedure Act claim, Plaintiff has not alleged a final agency action. In addition, Plaintiff has failed to state a claim for relief regarding his APA claim and his claim for disability discrimination under the Rehabilitation Act. The federal defendants' suggestions in support are stated below:

## STANDARDS OF REVIEW

### I. Fed. R. Civ. P. 12(b)(1)

The applicable decisional standard when determining a Rule 12(b)(1) motion depends upon whether the movant makes a "facial" or a "factual" challenge to subject matter jurisdiction. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). In a facial challenge, the movant argues that the allegations in the complaint are not sufficient to establish subject matter jurisdiction. *Id.* The federal defendants assert a facial challenge in this motion, and the Court must therefore afford Plaintiffs the same protections as they would be entitled to receive under Rule 12(b)(6). *Id.*

### II. Fed. R. Civ. P. 12(b)(6)

In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must view the allegations in the complaint liberally and in the light most favorable to the plaintiff. *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008). Additionally, the court "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005). To survive a 12(b)(6) motion to dismiss, a complaint must do more than recite the bare elements of a cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). It must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "While a complaint . . . does not need detailed factual allegations," a plaintiff must provide the grounds of his entitlement with more than mere "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

"[T]he court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials

that are necessarily embraced by the pleadings" without converting a 12(b)(6) motion into a summary judgment motion. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (internal quotation marks and citations omitted). This includes "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (quoting *Miller v. Redwood Toxicology Lab, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012)).

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff alleges, in relevant part that he is partially-deaf and that he is a heart attack survivor who suffers from "medical anxiety." Am. Compl. ¶¶ 2–3. As such, he alleges that he is "medically vulnerable to acute psychological and physical stress." *Id.* ¶ 3. Plaintiff further alleges that his primary means of communication in noisy environments is a speech-to-text app on his personal cell phone. *Id.* ¶ 13.

Plaintiff alleges that, while going through the TSA security checkpoint in advance of a flight, Plaintiff disclosed to a TSA officer that he was "deaf and hard of hearing" and that he required "communication accommodations." *Id.* ¶ 31–33. He further alleges that he surrendered his phone—which held his speech-to-text app—for screening via the x-ray scanner. *Id.* ¶ 34. When instructed, he then walked through the Advanced Imaging Technology scanner (AIT), also known as a body scanner. *Id.* ¶ 35. The AIT scanner alerted on an area of Plaintiff's body, and TSA officers approached Plaintiff and informed him that he would be subject to a pat-down. *Id.* ¶ 36. Plaintiff requested "by gesture and voice" that TSA officers communicate with him in writing or allow Plaintiff to retrieve his phone and use his speech-to-text app, however both requests were refused. Am. Compl. ¶ 37. Plaintiff then "emptied his pockets, raised his shirt, and exposed his waistline and clothing to demonstrate visually that he had no concealed items." *Id.* ¶

38. However, TSA agents continued to demand a pat-down. *Id.* Ultimately, Plaintiff was surrounded by approximately six TSA officers and two SGF airport police officers. *Id.* ¶ 41. Plaintiff then submitted to the pat-down—an "alarm resolution pat[-]down of his cargo side pant pockets—, was subsequently told that he was "free to go" and was allowed to continue onto his flight. *Id.* ¶ 31, 42, 53. His bag, phone, and identification were returned to him after a delay. *Id.* ¶ 43.

*Plaintiff's Administrative Complaints*

Plaintiff filed an online complaint with TSA's contact center on September 29, 2025. Am. Compl. ¶ 49. On September 30, 2025, TSA's Disability and Multicultural Branch referred the complaint to the TSA Customer Service Manager for SGF, determining the local airport would be better suited to address the concerns Plaintiff raised. Am. Compl. ¶ 51. On October 24, 2025, Brian Meadows, TSA Assistant Federal Security Director, Mission Support, for the State of Missouri, emailed Plaintiff in response to his complaint, stating as follows:

> TSA's Office of Civil Rights & Liberties, Ombudsman and Traveler Engagement reviewed your complaint and referred it to this office for handling. This office investigated and did not uncover any evidence that TSA personnel violated TSA screening procedures in screening your person and accessible property at the Springfield-Branson International Airport (SGF) on September 25, 2025.

Ex. A. See also Am. Compl. ¶ 57.

Plaintiff responded to Mr. Meadows' email, noting his belief that the matter "involve[d] civil rights and constitutional violations, not just compliance with TSA policy," and requesting further review by the DHS Office for Civil Rights and Civil Liberties. *See id.* On November 21, 2025, Kristin Andrade, Program Analyst with the TSA's Office of Civil Rights and Civil Liberties (TSA CRCL) provided an additional response to Plaintiff. This response stated in relevant part as follows:

Dear Mr. Mannon:

Thank you for your follow-up email to the Transportation Security Administration (TSA) Contact Center on November 6, 2025, regarding your initial complaint at Springfield-Branson International Airport (SGF) from the afternoon of September 29, 2025. . . .

TSA's Office of Civil Rights & Liberties, Ombudsman and Traveler Engagement Disability Section reviewed your complaint on September 30, 2025, as well as your follow-up complaint, and . . . [y]our complaint was then referred to the airport for handling as a customer service complaint. . . .

I have also reviewed all the cross office and department level correspondence available to me, officer statements and CCTV. . . . The TSA officers followed standard operating procedures (SOP). Any alarmed areas in yellow . . . will be patted down by hand, it is not optional for the passenger to simply turn their pockets inside out, the officers were correct. Additionally, you may not have access to any of your carry-on property until the body scanner alarm is cleared.

[P]atdowns . . . help us detect hidden and dangerous items, such as explosives. Patdowns are used to resolve alarms (as in your experience) and as part of our random screening activities. We believe these security measures are necessary and appropriate for ensuring the security and confidence of all air travelers.

. . .

We encourage you to contact the local airport authority, which is responsible for the operation and oversight of the airport if you still have concerns regarding the law enforcement officer's policies and procedures. TSA has no jurisdiction over airport or law enforcement personnel.

. . . . We now consider this matter closed.

Ex. B. Plaintiff followed up again, continuing to state his beliefs that his rights had been violated.

Ms. Andrade sent a subsequent response on November 25, 2025:

Good Afternoon Mr. Mannon,

Thank you for your updates and clarifications.

Your complaint was reviewed twice by [TSA CRCL][.] It was deemed a customer service complaint and as such has been reviewed by me, and by several people at the airport.

The body scanner machine will indicate the location of a potential threat item on a generic, computer-generated outline of a person that appears on a monitor outside the machine. You

> will see the monitor when you exit and it is the same monitor the TSA Officer views. If an item causes an alarm, *you will undergo additional screening,* which includes a patdown.
>
> You received an alarm resolution patdown where the officer at 6:29 in the CCTV video pats down your cargo side pant pockets, not a full-body pat down. As I stated [in the November 21, 2025 response], passengers may not clear their own alarms, only the officer may do so. You should not be asked or required, nor did the SGF officers do so, to remove or lift any article of clothing to reveal a sensitive body area. You chose to raise your clothing.
>
> . . . We now consider this matter closed and this is our final response.

*Id.*

## ARGUMENT

### I. This Court Lacks Jurisdiction Over Plaintiff's Claims

#### a. Monetary Damages Are Not Available against the federal defendants.

The United States enjoys immunity from civil lawsuits except where it has waived that immunity specifically and unequivocally. *United States v. Mitchell*, 463 U.S. 206, 212 (1983). "Sovereign immunity is jurisdictional in nature," and "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Because a suit against a federal officer is merely "another way of pleading an action against an entity of which [the] officer is an agent," sovereign immunity extends to suits against federal officials acting in their official capacity. *Lewis v. Clarke*, 581 U.S. 155, 162 (2017) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165–166 (1985)).

Plaintiff seeks monetary damages on each of his claims. Am. Compl. at 29–30, ¶¶ 2.a, 2.g. However, monetary damages are not available, as neither § 504 of the Rehabilitation Act nor the Administrative Procedure Act waive the United States' sovereign immunity for claims for monetary damages. *Lane v. Pena*, 518 U.S. 187, 191 (1996) ("The clarity of expression necessary to establish a waiver of the Government's sovereign immunity against monetary damages for violations of § 504 is lacking in the text of the relevant provisions."); 5 U.S.C. § 702; *Batsche v.*

*Price*, 875 F.3d 1176, 1177 (8th Cir. 2017) (affirming district court's dismissal of APA claim because the "true nature" of the claim was one for money damages). Accordingly, any claim for money damages against the federal defendants must be dismissed for lack of subject matter jurisdiction.

**b. Plaintiff lacks standing for the declaratory and injunctive relief he seeks.**[1]

To invoke the Court's jurisdiction to decide a matter, a plaintiff must establish— "to the manner and degree of evidence required" at each successive stage of litigation—1) an "injury-in-fact," 2) "a causal connection between the injury and the conduct complained of," and 3) that the Court is likely able to redress the plaintiff's injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–61 (1992). In order to establish an injury-in-fact at the pleading stage, a plaintiff bears the burden to plead facts showing a "concrete and particularized" "actual or imminent"—as opposed to a "conjectural or hypothetical"—"invasion of a legally protected interest." *Id.* at 560. The standing inquiry is "especially rigorous where reaching the merits of the dispute would force [the Court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (quoting *Raines v. Byrd*, 521 U.S. 811, 819–20 (1997)).

---

[1] Additionally, the Court lacks jurisdiction over Plaintiff's claims against the federal defendants because Plaintiff challenges the application of TSA Standard Operating Procedures. Claims challenging TSA's Standard Operating Procedures are subject to the exclusive jurisdiction of the courts of appeals. 49 U.S.C. § 46110. *Ventura v. Napolitano*, 828 F. Supp. 2d 1039, 1044 (D. Minn. 2011) ("[C]ourts uniformly hold that all challenges to TSA orders, policies, and procedures must be brought in the Circuit Courts of Appeals under § 46110.").

Undersigned counsel intends to file a subsequent motion to dismiss for lack of subject matter jurisdiction on this basis but has not fully briefed the argument here: TSA SOPs are Sensitive Security Information as that term is defined in 49 C.F.R. § 1520.5, and thus cannot be filed publicly. *See* 49 C.F.R. § 1520.9. Undersigned counsel has been unable to coordinate an affiant who can testify to the relevant contents of the SOPs in advance of the filing deadline. Once an appropriate affidavit has been prepared, the undersigned will file a subsequent Rule 12(b)(1) motion. *See* Fed. R. Civ. P. 12(h)(1) & (3) (noting that a party does not waive a defense to subject matter jurisdiction by omitting the defense from an initial motion to dismiss).

Plaintiff's requests for declaratory and injunctive relief fail because he alleges no threat of future injury. His allegations are purely that he was previously subjected to a pat-down and disagreed with the TSA's handling of his complaints. Yet even assuming that Plaintiff's rights were violated, "past exposure to illegal conduct does not, in and of itself, show a present case or controversy regarding injunctive relief if it is unaccompanied by any continuing, present adverse effects." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). The closest Plaintiff gets to asserting an ongoing or future injury is in his request for relief to Count III, wherein he requests an "anti-retaliation order" and "affirmative confirmation that no [Secondary Security Screening Selection] or watchlist designation has been or will be applied"). Am. Compl. ¶ 84. However, Plaintiff has made no factual allegations that he is subject to ongoing retaliation or has a reasonable belief that he will be subject to retaliation in the future, nor has he alleged any facts indicating that he has been placed on a watchlist or subjected to Secondary Security Screening Selection. Indeed, Plaintiff has failed to even allege future travel plans. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992) ("Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that [the Supreme Court's] cases require.") At best, this is an allegation of a "possible future injury"—not a "threatened injury" that is "certainly impending"—and, thus, Plaintiff does not satisfy the requirements of Art. III. *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990); *see also Clapper v. Amnesty, Int'l USA*, 568 U.S. 398 (2013) ("threatened injury must be *certainly impending* to constitute injury in fact," and "allegations of *possible* future injury are not sufficient") (internal quotation marks and citation omitted). Plaintiff's claims for declaratory and injunctive relief against the federal defendants must therefore be dismissed for lack of subject matter jurisdiction.

### c. Plaintiff has not alleged a final agency action, and thus the Court lacks subject matter jurisdiction over Plaintiff's APA claim.

In addition, Plaintiff's APA claim fails because he has failed to allege a final agency action. To qualify as a final agency action for the purposes of the APA, an agency's action '"must inflict some legal injury upon the party seeking judicial review,' either compelling affirmative action or prohibiting otherwise lawful action." *Union Pac. R.R. Co. v. U.S. R.R. Ret. Bd.*, 162 F.4th 908, 917 (8th Cir. 2025); *Sisseton-Wahpeton Oyate of Lake Traverse Rsrv. v. U.S. Corps of Eng'rs*, 888 F.3d 906, 915 (8th Cir. 2018). Plaintiff points to the correspondence between himself, Mr. Meadows, and Ms. Andrade, however the emails from Mr. Meadows and Ms. Andrade merely explained to Plaintiff why no action would be taken on Plaintiff's complaint. Exs. A & B.. They neither prohibit nor compel any action by Plaintiff, and Plaintiff's APA claim must therefore be dismissed for lack of subject matter jurisdiction.

## II. Plaintiff fails to state a disability discrimination claim under the Rehabilitation Act (Count I).

Section 504 of the Rehabilitation Act of 1973 prohibits discrimination against a person "solely by reason of her or his disability" in any "program or activity" conducted by an Executive agency or by a federally funded entity:

> No otherwise qualified individual with a disability in the United States * * * shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a). In a claim under Section 504, plaintiffs must show that (1) they are disabled within the meaning of the Act; (2) they are otherwise qualified; (3) they were excluded from, denied the benefit of, or subject to discrimination under a program or activity; and (4) the program or activity is carried out by a federal executive agency or with federal funds. *American Council*

*of the Blind v. Paulson*, 525 F.3d 1256, 1266 (D.C. Cir. 2008); *see also Loye v. Cnty. of Dakota*, 625 F.3d 494, 497 (8th Cir. 2010); *Argenyi v. Creighton Univ*., 703 F.3d 441, 447 (8th Cir. 2013). Plaintiffs may make out a prima facie case by showing they have been denied "meaningful access" to a covered program or activity, in which case the government must grant a "reasonable accommodation" unless doing so would be an "undue burden" or constitute a "fundamental alteration" of the program or activity. *Alexander v. Choate*, 469 U.S. 287, 299-301 (1985); *American Council of the Blind v. Paulson*, 525 F.3d 1256, 1267-77 (D.C. Cir. 2008); *Loye v. Cnty. of Dakota*, 625 F.3d 494, 500 (8th Cir. 2010) ("the legal standard is effective communication that results in meaningful access to government services").

Assuming *arguendo* that Plaintiff's amended complaint demonstrates the first, second, and fourth elements enumerated above, Count I still fails because his own allegations demonstrate that he was provided with meaningful access to TSA security screening, through which he was ultimately cleared into the sterile area:[2]

The Government understands Plaintiff's Count I to contend that Plaintiff was denied meaningful access to TSA's security checkpoint program because (according to Plaintiff) he must use his personal cell phone to communicate, and TSA did not return his cell phone to him until screening of his person was complete. But Plaintiff's choice of accommodation is not controlling, so long as effective communication occurred. *See Durand v. Fairview Health Servs*., 902 F.3d 836, 842 (8th Cir. 2018) ("while '[b]oth the ADA and [RA] are intentionally broad in scope, ... they do not require institutions to provide all requested auxiliary aids and services"; instead a court applies the 'meaningful access' standard"). And as demonstrated by Plaintiff's own allegations, he clearly understood what was conveyed to him at the checkpoint, and he cleared screening and

[2] The sterile area refers to portions of an airport defined in the airport security program that provides passengers access to boarding aircraft and to which the access generally is controlled by TSA, an aircraft operator, or a foreign air carrier.

proceeded to take his flight. *See Bahl v. Cnty. of Ramsey*, 695 F.3d 778, 787 (8th Cir. 2012) (quoting *Loye*, 625 F.3d at 500) ("In light of the purpose of the communication and the context in which it was given, the charge statement covered a topic that was 'not complex, and [Bahl's] responses and actions taken reflected that [Commander Luna's message] was understood,' such that Bahl was provided with 'meaningful access' to the service of being notified of the reason for his arrest.")

Plaintiff's acknowledgment of his understanding of what was expected of him is demonstrated by his allegations that (1) he walked through the AIT "as instructed," Am. Compl. ¶ 35; (2) after the AIT, "additional TSA officers approached and indicated that plaintiff would be subjected to a pat-down . . . [t]he body scanner had registered an alarm in a 'yellow area' on the AIT generic outline," *Id*. ¶ 36; (3) he "emptied his pockets, raised his shirt, and exposed his waistline and clothing to demonstrate visually that he had no concealed items . . . TSA continued to demand a hands-on pat-down," *Id*. ¶ 38; (4) a TSA supervisor eventually typed a brief written message on her personal phone to communicate with Plaintiff,[3] *Id*. ¶ 39; and (5) Plaintiff eventually submitted to a pat-down, *Id*. ¶ 42. The Rehabilitation Act only requires effective communication that results in meaningful access to government services. And while Plaintiff may not have been satisfied with the message conveyed—that he needed to complete a pat-down to complete screening of his person—it is clear that he understood the message. *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1086–87 (11th Cir. 2007) (deaf person's response to police instructions demonstrated effective communication). Further, Plaintiff completed the screening process and was told he was free to go, so he was able to obtain the same result—finishing

[3] Plaintiff claims this communication was delayed, but under circuit precedent, delayed communication generally does not amount to a denial of effective communication. *Loye v. Cnty. of Dakota*, 625 F.3d 494, 499 (8th Cir. 2010).

screening and proceeding to the sterile area of the airport—as other, non-disabled travelers. *See Loye v. Cnty. of Dakota*, 625 F.3d 494, 500 (8th Cir. 2010) ("[t]here is no evidence that Plaintiffs failed to obtain any service because Nurse Greeley's advice or assistance was not understood.")

## III. Plaintiff fails to state a claim under the APA (Count IX).

Finally, Plaintiff seeks Court review under the Administrative Procedures Act, 5 U.S.C. § of the TSA's decision to close his complaints. He alleges that the closure was "arbitrary, capricious, an abuse of discretion, and not in accordance with law" because (1) TSA CRCL referred his complaint to the Customer Service Manager for SGF, and TSA limited its review to internal SOP compliance; (2) TSA routed the complaint to the alleged offenders, creating an irreconcilable conflict of interest; (3) one email mis-stated the date of the incident, and (4) the correspondence from Mr. Meadows and Ms. Andrade did not address relevant factors and was unsupported by reasoned decision-making. Am. Compl. ¶ 112. *See also* 5 U.S.C. § 706(2)(a).

Plaintiff's APA claim fails. The scope of APA review is narrow and deferential, and a court cannot substitute its judgment for that of the agency. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

> This standard of review gives agency decisions a high degree of deference. The reviewing court decides whether the agency's decision was based on consideration of the relevant factors and whether there has been a clear error of judgment. If an agency's determination is supportable on any rational basis, then a reviewing court must uphold it.

*Mandan, Hidatsa & Arikara Nation v. U.S. Dep't of the Interior*, 95 F.4th 573, 579 (8th Cir. 2024) (internal citations and quotations omitted).

On their face, each of TSA's responses to Plaintiff's complaint were reasonable. Plaintiff complained of his security screening at SGF in September 2025. In response, TSA CRCL considered whether the screening officers followed TSA procedure. The screeners themselves did

not conduct the investigation of Plaintiff's allegations. Rather, independent TSA headquarters officials who oversee passenger complaints about screening issues determined that what Plaintiff presented amounted to a customer service issue and initially referred it to independent personnel at the airport where the issue occurred. Even if the airport's determination was somehow tainted, Ms. Andrade, an independent TSA headquarters employee within TSA CRCL twice reviewed his complaint and provided full and well-reasoned responses in her emails of November 21, 2025, and November 25, 2025, that explained the agency's rationale in handling Plaintiff's concerns about his screening encounter. *See* Ex. B. Finally, the typo Plaintiff complains of related to the date of the incident is just that—a typographical error that does not amount to an APA violation. *See Mahnomen Cnty., Minn. v. Bureau of Indian Affs*., 604 F. Supp. 2d 1252, 1258 (D. Minn. 2009) (noting in an APA challenge, that "the inclusion of Tract 2 in the Notice of Decision can reasonably be viewed as nothing more than a typographical error.").

**CONCLUSION**

For these reasons, all of Plaintiff's claims against the Federal Defendants in the Amended Complaint should be dismissed.

Respectfully submitted,

R. Matthew Price
United States Attorney

By: *<u>/s/ Wyatt R. Nelson</u>*
Wyatt Nelson,
Missouri Bar No. 72944;
Assistant United States Attorney
901 St. Louis Street, Suite 500
Springfield, MO 65806
Telephone: (417) 831-4406
wyatt.nelson@usdoj.gov

ATTORNEYS FOR FEDERAL

DEFENDANTS

**CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of August 2026, a true and correct copy of the foregoing document was filed with the Court using the Court's CM/ECF system and was mailed to Pro Se Plaintiff at the address listed below.

Leslie Mannon
25641Ortega Drive
Lebanon, MO 65536

*/s/ Wyatt R. Nelson*
________________________________
Wyatt R. Nelson
Assistant United States Attorney